[Cite as *State v. Taslitz*, 2015-Ohio-3474.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102084**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BENJAMIN TASLITZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-586852-A

**BEFORE:** Kilbane, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 27, 2015

**ATTORNEY FOR APPELLANT**

Edward F. Borkowski, Jr.
P.O. Box 609151
Cleveland, Ohio 44109

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Oscar E. Albores
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Benjamin Taslitz ("Taslitz"), appeals from his convictions for two counts of misdemeanor assault, and challenges the manifest weight of the evidence supporting the convictions. Having thoroughly reviewed the record and the controlling case law, we affirm.

{¶2} In the early morning hours of May 13, 2014, Taslitz was involved in an altercation at the home of David Lindsay ("Lindsay"). On June 30, 2014, Taslitz was indicted on one count of felonious assault upon Lindsay, one count of misdemeanor assault upon Lindsay's girlfriend, Connie Martien ("Martien"), and one count of menacing by stalking Lindsay and Martien. Taslitz pled not guilty and the matter proceeded to a bench trial on October 7, 2014.

{¶3} For its case, the state presented the testimony from Lindsay and Martien.

{¶4} Lindsay testified that he met Taslitz approximately 25 years ago, and the two became friendly again within the past three years. On May 12, 2014, Taslitz visited Lindsay at his home in Cleveland Heights. According to Lindsay, the men sat in his garage and drank Black Velvet whiskey while Lindsay played his ukulele and Taslitz, an avid photographer, took pictures. At approximately 1:00 a.m., Lindsay suggested that Taslitz spend the night on his couch. The men went inside and Lindsay observed that Martien had been awakened by the noise they were making and was sitting in the living room. As Lindsay walked past Martien on his way to the downstairs bathroom, he told

her that Taslitz would be sleeping on the couch. Prior to that point, according to Lindsay, there had been no dispute and "zero argument," about noise. While he was in the bathroom, Lindsay heard a ruckus. When he returned to the living room, he observed Martien on the floor with Taslitz on top of her and striking her. Lindsay ran to them and slugged Taslitz in the jaw, and "[w]ithin a few seconds, [Taslitz] was on top of [Lindsay] and punching [him]." Martien stated that she was calling the police, and Taslitz fled from the home.

{¶5} Lindsay further testified that, over the next few days, his left ankle began to swell and bruise. He went to Family Urgent Care Center on May 16, 2014, and was diagnosed with a fracture to his left fibula. Lindsay also asserted that he sustained an injury to his pectoral area because of the force with which he struck Taslitz in the jaw. Lindsay had missed work for three days after the incident and sought financial compensation from the Ohio Victims of Crime Fund ("OVC Fund"). Following the incident, Lindsay sent Taslitz an email, which was not admitted into evidence, indicating he had contacted Taslitz's probation officer in Colorado. Lindsay also informed Taslitz that if he did not respond to the email, he would file a police report in order to preserve his right to recovery under the OVC Fund. Lindsay also photographed his injuries and the injuries to Martien's arms.

{¶6} On cross-examination, Lindsay admitted that the police have responded to his home approximately six times within the previous six months because of various disturbances involving the couple. The police have also responded to additional

disturbances involving the couple at Martien's home. Lindsay conceded that Taslitz had no involvement in any of these prior incidents. Lindsay also acknowledged that Martien is a "functioning alcoholic," and has struggled with addiction, but he did not know if she had consumed alcohol on that particular night. Lindsay denied that Martien told them to keep quiet prior to the altercation and denied that they had argued over noise. He did acknowledge that Martien had to work the next morning, and she went to the living room in order to escape the noise from the garage.

{¶7} Martien testified that after Lindsay informed her that Taslitz was coming over, Lindsay assured her that he would only stay 20 minutes and that they would stay in the garage so that she could go to sleep. At 12:15 a.m., she was awakened by banging and drilling. She called Lindsay on her cell phone and asked the men to quiet down. She then went to sleep on the recliner in the living room. Later, after Lindsay told her that Taslitz would be spending the night, Lindsay went into the bathroom, leaving Martien no opportunity to respond to him about Taslitz spending the night. Martien maintained that while Lindsay was in the bathroom, she told Taslitz to sleep upstairs. She testified that he then commenced an unprovoked attack on her. Martien maintained that, without any justification, Taslitz pulled her to the floor and began to punch her in her arms and on the top of her head. She authenticated photographs taken after the incident that depict bruises on her arms. Martien further testified that as Taslitz assaulted her, Lindsay came out of the bathroom and punched Taslitz in the jaw. In response, Taslitz quickly pulled Lindsay to the floor, straddled him, and struck him repeatedly.

**{¶8}** Martien acknowledged that she frequently consumes alcohol and sometimes falls asleep in the chair when she drinks. She also noted that because of her hip surgery, she uses a cane; however, she denied striking Taslitz with it. On questioning from the court, Martien denied that she takes blood-thinning medication that may enhance her body's tendency to bruise, and she also denied that the bruises were the result of being restrained, rather than assaulted. Martien insisted that the photographs do not depict additional injuries to her head because they are hidden by her hair. Martien also informed the court that the couple first went to the police on the following Saturday after the altercation, but no officers were available to take their statements, so they returned together the next day.

**{¶9}** For the defense, Taslitz testified that he was convicted of drug dealing in Colorado and has been on parole for the past three years. Prior to that, he worked as a paramedic in Cleveland. He and Lindsay have known each other since junior high school, and prior to the incident, they have worked on remodeling projects together. Taslitz stated that he met Martien approximately two and one-half years ago. Taslitz stated that Lindsay and Martien consume a half-gallon of Black Velvet whiskey each night. During their prior interactions, Martien has been intoxicated and belligerent. Taslitz stated that Martien generally makes him very uncomfortable and because of that he leaves.

**{¶10}** On the night of the altercation, Taslitz testified that he was drinking water from his water bottle, and Lindsay was drinking Black Velvet whiskey. At

approximately 11:30 p.m., Taslitz asked Lindsay if he could go inside to refill his water bottle. At that point, they went inside and Lindsay picked up his guitar and began to play it softly, while Martien was asleep nearby on a chair. A few moments later, Lindsay went into the bathroom, and Taslitz went to the kitchen sink to refill his water bottle.

{¶11} According to Taslitz, while he was at the sink, and with his back turned, Martien came at him from behind and struck him in the head. He then grabbed her by the arms, "swept her to the ground * * * and straddled her by the waist." As he was getting up off of her, Lindsay punched him in the jaw. In response, Taslitz brought Lindsay to the ground, straddled him, and pinned his arms to his shoulders. Taslitz informed Lindsay that Martien had started the altercation by assaulting him, and he asked Lindsay why he struck him. Taslitz insisted that he did not assault Lindsay. Taslitz also stated that his jaw was injured by Lindsay and has photographs of his injury, however, he did not have them with him. He asserted that his photographs are on his girlfriend's computer and that she lives in Cincinnati.

{¶12} On cross-examination, Taslitz conceded that Lindsay's trial photographs depict marks on Lindsay's face, but Taslitz denied that they were bruises and denied striking Lindsay. Taslitz acknowledged that the marks on Martien's arms are bruises, but he stated that they were from when he restrained her arms and not from striking her.

{¶13} On October 9, 2014, the trial court acquitted Taslitz of the charge of menacing by stalking, but found him guilty of the lesser included offense of misdemeanor

assault on Lindsay in Count 1, and guilty of misdemeanor assault on Martien as charged in Count 2. The court sentenced Taslitz to one year of community control sanctions. We remanded the matter in order for the trial court to indicate the count of the indictment for which the sentence was imposed. On remand, the trial court sentenced Taslitz to concurrent terms of 180 days of incarceration for Counts 1 and 2, but suspended the sentence and placed him on community control for a period of one year.

{¶14} Taslitz now appeals, assigning the following error for our review:

[Taslitz's] convictions were against the manifest weight of the evidence because the evidence offered by the state was not credible and because the trial court failed to recognize appellant's affirmative defense.

{¶15} Within this assignment of error, Taslitz asserts that his convictions are against the manifest weight of the evidence because Lindsay and Martien were not credible at trial, and the trial court failed to properly consider his affirmative defense of self-defense.

{¶16} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court described a challenge to the manifest weight of the evidence supporting a conviction as follows:

The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997- Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts

differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶17}** An appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*. In addition, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

Reversing a conviction on the manifest weight of the evidence requires the unanimous concurrence of all three appellate judges. *Thompkins* at paragraph four of the syllabus.

{¶18} In this matter, Taslitz was convicted of two counts of misdemeanor assault in violation of R.C. 2903.13(A), for "knowingly caus[ing] or attempt[ing] to cause physical harm to another."

{¶19} At trial, Taslitz argued that he acted in self-defense. In order to establish a self-defense claim, the defendant must demonstrate by a preponderance of the evidence that: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he must not have violated any duty to retreat or avoid danger. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990); *see also State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. The elements of self-defense are cumulative and "'[i]f the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense.'" *Williford*, quoting *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶20} The amount of force used in self-defense, however, must be reasonable. *State v. Fox*, 36 Ohio App.3d 78, 79, 520 N.E.2d 1390 (9th Dist.1987). That is, "'one may use such force as the circumstances require in order to defend against danger that one has good reason to apprehend.'" *Id.,* quoting *State v. McLeod,* 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948); *see also Akron v. Dokes*, 31 Ohio App.3d 24, 25, 507

N.E.2d 1158 (9th Dist.1986). Where one uses a greater degree of force than is necessary under all the circumstances, it is not justifiable on the grounds of self-defense. *See State v. Jackson*, 10th Dist. Franklin No. 00AP-444, 2000 Ohio App. LEXIS 5808 (Dec. 14, 2000), citing *McLeod*. The issue of whether a defendant used unreasonable force in repelling a perceived danger is a question of fact for the jury. *Jackson*, citing *State v. Deans*, 10th Dist. Franklin No. 98AP-1463, 1999 Ohio App. LEXIS 4602 (Sept. 30, 1999).

{¶21} In this matter, we find it significant that Lindsay omitted from his testimony the fact that Martien had called him from her cell phone to ask the men to quiet down. To the contrary, Lindsay claimed that there were "zero issues" over noise prior to the altercation. This key omission damages his credibility. In addition, although Martien insisted that Taslitz had hit her on her head, the photographs do not depict additional injuries to her head; however, according to Martien, the injuries to her head were hidden by her hair. Moreover, it is undisputed that Lindsay immediately punched Taslitz, although he conceded that it was possible that Martien was drinking and it was also possible that she was the aggressor.

{¶22} Nonetheless, the record shows that the court considered these issues, and even asked additional questions of Martien, and it is undisputed that she is smaller than Taslitz. We therefore conclude that the court properly considered these issues and properly weighed them against the strong force that Taslitz used on both Martien and Lindsay by forcing her to the ground and fracturing Lindsay's leg. Considering the

entire record, we cannot conclude that this case presents the rare instance where the finder of fact clearly lost its way and created such a manifest miscarriage of justice in convicting the defendant of the offenses. Accordingly, we are unable to conclude that Taslitz's two convictions for misdemeanor assault are against the manifest weight of the evidence.

**{¶23}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR